**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CITY OF SHREVEPORT | CIVIL ACTION NO. 05-1713 |
| VERSUS | 04-BK-13259-S11/05-AP-1024 |
| HOLLYWOOD CASINO SHREVEPORT | JUDGE S. MAURICE HICKS, JR. |

**MEMORANDUM RULING**

Before the Court is an appeal, pursuant to 28 U.S.C. § 158(a) and Rule 8002 of the Federal Rules of Bankruptcy Procedure, from a judgment of the United States Bankruptcy Court for the Western District of Louisiana. See Record Document 1-1. The judgment, entered on August 29, 2005, granted a Motion for Summary Judgment filed by the defendant, Hollywood Casino Shreveport ("Hollywood"); dismissed, with prejudice, the claims of the plaintiff, the City of Shreveport ("the City"); and dismissed as moot a Motion for Summary Judgment filed by the City. See Record Document 1-2. Based on the following, the bankruptcy court's judgment of August 29, 2005 is **AFFIRMED**.

**I.  BACKGROUND.**

   **A.  Facts.**

The general background facts of this case are not in dispute. On May 19, 1999, the City, as landlord, and QNOV, as tenant, entered into a Ground Lease ("the Lease"). See Record Document 3, Item 1 (Exhibit A to the City's original petition). Under the terms of the Lease, QNOV leased "certain immovable property located in the City . . . for the purpose of constructing and operating a riverboat/entertainment complex, Hotel . . . no less than 1950 surface and structured parking spaces and related facilities (collectively, the 'Shoreside Complex') and for other uses and purposes as set forth in this Lease." Id.

Hollywood later succeeded to QNOV's interest in the Lease. See id., Item 1 (Petition, ¶ 4).

On July 30, 1999, Hollywood entered into a written contract with Broadmoor Anderson, A Joint Venture, a Louisiana joint venture d/b/a Broadmoor/Roy Anderson Corp. ("BRAC") to construct the Shoreside Complex. See id., Item 1 (Petition, ¶ 6). Later in 1999, BRAC notified the City that it suspected that it may have hit and cut through a sewer main belonging to the City while it was working on the construction of the Shoreside Complex. See id., Item 1 (Petition, ¶ 7). The City sent personnel from its Engineering Department and Department of Operational Services, Office of Water and Sewage, to assess the situation. See id., Item 1 (Petition, ¶ 9). Due to time constraints, the City agreed to repair the damaged sewer main with the understanding that permanent repairs would be undertaken at a later date. See id., Item 1 (Petition, ¶ 10). In 2001, the City hired Insituform Technologies, Inc. ("Insituform") to permanently repair the sewer main. See id., Item 1 (Petition, ¶ 11). Insituform discovered that the damage to the sewer main was more severe than originally believed. See id. Insituform completed its repair work on June 11, 2001 and the City alleges that the cost of the repairs totaled $211,387.27. See id., Item 1 (Petition, ¶¶ 11 & 12).

By letter dated June 18, 2001, the City requested that Hollywood reimburse the approximate $211,000.00 in expenses incurred by the City in repairing the sewer main. See id., Item 1 (Petition, ¶ 15). Specifically, the City's Director of Operational Services, H.M. Strong ("Strong"), wrote a letter to Mr. Tony Barnes, Director of Facilities, Hollywood Casino in Shreveport, Louisiana. See id., Item 17 (Letter attached as Exhibit B to Affidavit of Tonya Tarrant). In that letter, Strong requested that Hollywood reimburse the City for

extra, unanticipated costs in the amount of $211,000.00.  See id.  According to Tonya Tarrant, the secretary of Hollywood Casino Shreveport, Hollywood received the City's June 18, 2001 letter.  See id., Item 17 (Affidavit of Tonya Tarrant).  Hollywood did not comply with the City's request.

On May 12, 2003, the City, through counsel, sent a "Notice" in conformity with Article XXXVI of the Lease to demand reimbursement of the approximately $211,000.00 the City had spent making permanent repairs to the sewer main.  See id., Item 1 (Petition, ¶ 16).  Again, Hollywood did not comply with the City's demand.  See id.

**B.	Procedural History.**

On July 28, 2004, the City filed a petition against Hollywood in the First Judicial District Court of Louisiana, Caddo Parish.  See Record Document 3, Item 1 (Notice of Removal).  In this original petition filed in state court, the City sought $211,387.27 as Additional Rent under the terms of the Lease.  See id., Item 1 (Petition, ¶ 17).  Hollywood removed the case to the United States District Court for the Western District of Louisiana, Shreveport Division in March 2005.  See id., Item 7 (Notice of Removal).  The case was referred to the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division on that same date.  See id.  On April 28, 2005, Hollywood answered the City's petition.  See Record Document 3, Item 6 (Answer).  Then, on June 13, 2005, the bankruptcy court granted the City's motion for leave and the City filed its First Amended Complaint on that same date.  See Record Document 3, Items 8 (Order) & 9 (First Amended Complaint).  In the First Amended Complaint, the City alleged an additional basis for relief, namely that Hollywood, in accordance with the indemnification provision of the Lease, was indebted to the City in the amount of $211,387.27.  See Record Document 3,

Item 9, (First Amended Complaint, ¶ 21).

Both the City and Hollywood filed Motions for Summary Judgment. See Record Document 3, Items 12 & 15 (Motions for Summary Judgment). The cross motions were set for hearing on August 15, 2005. See Record Document 3, Items 18 & 19 (Notices of Hearing). After the cross motions were set for hearing, Hollywood filed a motion for extension of time to conduct discovery and to oppose the City's Motion for Summary Judgment. See Record Document 3, Item 20 (Motion).

The hearing on Hollywood's Motion for Summary Judgment took place on August 15, 2005. See Record Document 3, Item 27 (Transcript). After extensive briefing and argument from both parties, the bankruptcy court granted Hollywood's Motion for Summary Judgment, reasoning that the "obligations that the parties have in this case are controlled by the lease"; that the City's claim was one for Additional Rent; and such claim had prescribed. See Record Document 3, Item 27 (Transcript). On August 29, 2005, the bankruptcy court entered a judgment granting the Motion for Summary Judgment filed by Hollywood; dismissing, with prejudice, the claims of the City; and dismissing as moot the Motion for Summary Judgment filed by the City. See Record Document 3, Item 24 (Judgment).

Following the entry of judgment on August 29, 2005, the City timely filed its notice of appeal on September 7, 2005. Thus, the City timely appealed the bankruptcy court's judgment of August 29, 2005.

## C. Relevant Provisions of the Lease.[1]

Article VI of the Lease pertains to "Additional Payments by Tenants; Impositions." Specifically, Section 6.01 provides, in pertinent part:

> 6.01 **Landlord's Net Return.** The parties intend that this Lease shall be a "net lease,"so that Rent shall provide Landlord with a "net" return for the Term, free from any expenses or charges with respect to the Premises, except as specifically provided in this Lease. Accordingly, Tenant ***shall pay as Additional Rent*** and discharge, before failure to pay the same shall create a material risk of forfeiture or give rise to a penalty, ***each and every item of expense of every kind and nature whatsoever related to or arising from the Premises or by reason of or in any manner connected with or arising from the development, leasing, operation, management, maintenance, repair, use or occupancy of the Premises or any portion of the Premises***. (emphasis added.)

"Additional Rent" is defined in Article II of the Lease as "any and all sums and payments to be paid by Tenant pursuant to this Lease other than Fixed Rent, Percentage Rent and amounts payable under Section 34.23(b)."[2]

Article XXVII of the Lease pertains to "Default by Tenant; Remedies." Under Section 27.01(a) and 27.02 of Article XXVII, in the event of a monetary default, Hollywood's rights under the Lease cannot be terminated unless and until the City has given Hollywood notice of such monetary default, specifying in reasonable detail the amount of money required to be paid and the nature of such payment, and Hollywood has failed to cure its monetary default within thirty (30) days after receiving such notice. Article II of the Lease defines "Notice" as "any notice, demand, request, election, designation, or consent,

---

[1] A full and complete copy of the lease is attached to the City's original petition filed in state court. See Record Document 3, Item 1.

[2] Section 34.23(b) of the Lease pertains to "Payments in Lieu of Admission Fee" and has no application to the circumstances presented by this case.

including any of the foregoing relating to a Default or alleged default, that is permitted, required or desired to be given by either party in connection with this Lease." Article II goes on to state that "Notices shall be delivered, and shall become effective, only in accordance with Article XXXVI." Article XXXVI specifically pertains to "Notices" and requires that any notice to the Tenant under the Lease be delivered by Federal Express, certified mail (return receipt requested) or facsimile transmission followed by one of the preceding means to the following address:

> QNOV
> c/o HWCC-Louisiana, Inc.
> Two Galleria Tower
> 13455 Noel Road, Suite 2200
> Dallas, TX 75240
> Attention: General Counsel
> Fax: (972) 386-7411

Article XII, Section 12.01 of the Lease is entitled "Mutual Indemnity Obligations" and states in pertinent part:

> 12.01 **Mutual Indemnity Obligations.** Landlord and Tenant shall each Indemnify the other against: (a) any wrongful act, wrongful omission or negligence of the Indemnitor (or, in the case of Tenant, of any of Tenant's Subtenants) or its or their partners, directors, officers, or employees, or their equivalent; and (b) any breach or default by the Indemnitor under this Lease. In addition to and without limiting the generality of the foregoing indemnity, Tenant shall Indemnify Landlord against all of the following matters: (x) the management or occupancy of, or any work or activity performed in and on, the Premises, Shoreside Complex or any Riverboat Casino by Tenant during the Term . . . .

## II. APPLICABLE LAW AND ANALYSIS.

### A. Standard of Review.

In reviewing a decision of the bankruptcy court, this Court functions as an appellate court and applies the same standards of review generally applied in a federal court of

appeals. See In re Webb, 954 F.2d 1102, 1103-04 (5th Cir.1992). The bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact are not to be set aside unless clearly erroneous. See In re Pro-Snax Distribs., Inc., 157 F.3d 414, 420 (5th Cir.1998); *In re Webb*, 954 F.2d at 1104. A grant of summary judgment is reviewed *de novo.* See In re National Gypsum Co., 208 F.3d 498, 504 (5th Cir.), *cert. denied,* 531 U.S. 871, 121 S.Ct. 172 (2000).

### B. Summary Judgment Standard.

Federal Rule of Bankruptcy Procedure 7056 also provides that Rule 56 of the Federal Rules of Civil Procedure "applies in adversary proceedings." Under Rule 56, summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet

this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id.; see also Little, 37 F.3d at 1076.

## C. Analysis.

The City identifies three arguments on appeal: (1) the bankruptcy court erred in concluding that the indemnity provisions of Section 12.01 of the Lease do not obligate Hollywood to repair damages caused by its contractor, BRAC; (2) the City's claim to recover indemnity for damages caused by Hollywood's contractor are not subject to the three-year prescriptive period, but rather the ten-year prescriptive period applicable to claims for indemnity under Louisiana Civil Code Article 3499; and (3) regardless of whether the City's claim is viewed as one for indemnity under Section 12.01 of the Lease or one for Additional Rent under Section 6.01 of the Lease, the characterization of such claim as one for "Additional Rent" should not be construed as evidencing a deliberate, enforceable agreement between the City and Hollywood to shorten a ten-year prescriptive period to a three-year prescriptive period.  See Record Document 5 at 10.

### 1. Indemnity.

The bankruptcy court held that Section 12.01, the indemnity provision of the Lease, was inapplicable to this case.  Specifically, the bankruptcy court reasoned that if the parties to the lease had wanted the indemnity provision to include third parties such as BRAC, then "they could have added a couple of more clauses or a couple of more words to that indemnity provision.  But they didn't." Record Document 3, Item 27 (Transcript) at 19.  The bankruptcy court further stated that the wording of the indemnity provision indicates that for such provision to apply, the "damage ha[d] to be caused by the tenant or a subtenant or employees." Record Document 3, Item 27 (Transcript) at 19.  The City argues that the aforementioned ruling of the bankruptcy court is flawed because it disregards the plain

language of the indemnity provision and does not give effect to several Louisiana Civil Code articles pertaining to interpretation of contracts.

Section 12.01 of the Lease states that the City and Hollywood shall each indemnify the other against "any wrongful act, wrongful omission or negligence of the Indemnitor (or, in the case of Tenant, of any of Tenant's Subtenants) or its or their partners, directors, officers, or employees, or their equivalent" and that "in addition . . . Tenant shall Indemnify Landlord against . . . the management or occupancy of, or any work or activity performed in and on, the Premises, Shoreside Complex or any Riverboat Casino by Tenant during the Term." The City argues that Hollywood's obligation under the Lease to indemnify it with respect to "any work or activity performed in and on, the Premises, Shoreside Complex or any Riverboat Casino by Tenant during the Term" includes work undertaken by Hollywood to be performed by a general contractor, namely BRAC. Record Document 5 at 11-12. The City contends that such reading is supported by Louisiana Civil Code articles pertaining to contractual interpretation.[3] The City believes that since the very purpose of the Lease was to enable Hollywood to construct a riverboat/hotel/entertainment complex, the "common understanding" of the phrase "any work or activity performed in and on, the Premises, Shoreside Complex or any Riverboat Casino by Tenant during the Term" in

---

[3]Article 2047 states that "the words of a contract must be given their generally prevailing meaning" and that "words of art and technical terms must be given their technical meaning when the contract involves a technical matter."

Article 2049 provides that "a provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."

Article 2050 states that "each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."

Section 12.01 of the Lease surely contemplates work done by a general contractor hired by Hollywood to perform work on the premises of the Shoreside Complex. The City further contends that a more liberal reading of the word "work"[4] would give the indemnity obligation in the Lease "a reasonable measure of effectiveness" and that the Lease, as a whole, favors a reading of the indemnity provision that includes indemnification for the work of a third party, namely a general contractor hired by the tenant. See id.

In its brief, the City repeatedly quotes Section 12.01 as suggesting that Hollywood agreed to indemnify the City with respect to "any work or activity performed in and on . . . the Premises." However, the City fails to adequately address certain key language in Section 12.01, namely that the indemnity obligation extends only to "any work or activity performed in and on . . . the Premises . . . ***by Tenant***" (emphasis added). Like the bankruptcy court, this Court finds that the language of Section 12.01 is clear and that such language simply does not support the City's contention that Hollywood agreed to indemnity the City for the negligence of a third party such as BRAC. Under Section 12.01, Hollywood agreed to indemnify the City for its management and occupancy of the Premises and for work or activities it performed on the Premises, but not for work performed by third parties such as BRAC.

The Court also finds that the City's reliance on Louisiana Civil Code Articles 2047,

---

[4] The City also relies on the definition of work as stated in the Louisiana Private Works Act ("LPWA"), La. R.S. 9:4810. The LPWA defines work as a single, continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts. The City contends that this definition supports its position that the phrase "any work . . . performed . . . on . . . the Premises . . . by Tenant" encompasses work done by a general contractor hired by the tenant. Yet, the City has cited no authority suggesting that the LPWA's definition of work applies in the context of this case.

2049, and 2050 is misplaced. "Agreements to indemnify are strictly construed and the party seeking to enforce such an agreement bears the burden of proof." Liem v. Austin Power, Inc., 569 So.2d 601, 608 (La. App. 2 Cir. 1990). Further, while "a contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, . . . it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333 (5th Cir. 1981). The City's suggestion that the term "Tenant" encompasses independent third parties who perform contract work for the tenant goes against the clear language of the Lease and what the parties expressly agreed to in writing. Because the language in the Lease is clear, this Court will not go beyond those words in search of the parties' intent and give new meaning to the indemnity provision that the City claims to be generally prevailing "between and among sophisticated landowners and developers." Record Document 5 at 12; see also La. C.C. Article 2046 (stating that "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

Further, this Court has examined the Lease as a whole and notes that in other provisions of the Lease, the parties specifically addressed third parties and general contractors. For instance, in Section 12.02, the Lease contemplates indemnity in relation to third parties and actually uses the phrase "third parties" multiple times. Likewise, Section 14.01(d) requires Hollywood to "insure that the contractor of the Shoreside Complex maintains customary contractor's liability insurance having a limit of not less than

$25,000,000." Thus, there are other provisions of the Lease that clearly and specifically contemplate and reference third parties and general contractors. In fact, one of these provisions actually provides for obligations with respect to Hollywood's contractor.

After reviewing these provisions and the lease as a whole, this Court agrees with the bankruptcy court's reasoning that it would have been very easy for the parties to add specific language in Section 12.01 which clearly obligated Hollywood to indemnify the City for the actions of its contractor, but the parties simply did not do so. Considering the specific provisions of the Lease that make reference to third parties and general contractors and the overall complexity of the Lease, which surely was painstakingly reviewed by the parties before it was signed, this Court finds that the omission of language in Section 12.01 clearly obligating Hollywood to indemnify the City for actions of its general contractor was not a mere oversight, but rather evidencing the agreement reached by the parties for Hollywood to indemnify the City for its management and occupancy of the Premises and for work or activities it performed on the Premises, not for work performed by third parties such as BRAC. Accordingly, this Court affirms the bankruptcy court's finding that Section 12.01 is inapplicable to this case.

### 2. Additional Rent.

The bankruptcy court concluded that even if Section 12.01 applied to this case, the City's claim for indemnification would still fall into the category of Additional Rent under the Lease. The bankruptcy court reasoned that the Lease demonstrated the parties' intent to classify indemnification as Additional Rent. See Record Document 3, Item 27 (Transcript) at 20. Because the bankruptcy court concluded that all sums due under the Lease were either Rents or Additional Rents, the court concluded that claims based on such Rents

were governed by a three-year prescriptive period applicable to rents under the Louisiana Civil Code. Specifically, the bankruptcy court stated:

> I believe [the City's claims] are governed by the three-year prescriptive period, whether they be indemnification, which I don't think this is. I agree with [Hollywood's] argument, [they] are rents. In any event, the contract makes them all rents.

Record Document 3, Item 27 (Transcript) at 20-21.

The City argues that the bankruptcy court's finding on this issue is incorrect, maintaining that even if the sums due under the indemnity provision are classified as "Additional Rent," that classification does not alter their character as reimbursable expenses due under a contract. The City further contends that the fundamental character of Section 6.01 is a contractual guarantee by Hollywood, as compared to obligation to pay rent, which is classified in the Louisiana Civil Code as an obligation payable by the tenant/lessee for the "use and enjoyment of the thing for a term." La. C.C. Art. 2668. The City argues that the indemnity provision of the Lease is "a contractual adoption" of certain provisions of Louisiana Civil Code Article 2692[5] and that the obligation of the tenant/lessee to pay rent is entirely discreet from the obligation of the tenant/lessee to make repairs. See Record Document 5 at 13-14. The City argues that this distinction evidences that its claim against Hollywood, whether classified as indemnity or Additional Rent, is a contractual guarantee subject to the ten-year liberative prescriptive period applicable to personal

---

[5]Article 2692 states that "the lessee is bound to repair damage to the thing caused by his fault or that of persons who, with his consent, are on the premises or use the thing, and to repair any deterioration resulting from his or their use to the extent it exceeds the normal or agreed use of the thing."

actions under Louisiana Civil Code Article 3499.[6]

Hollywood counters the City's argument with the <u>Starns v. Emmons</u> case, arguing that the City's attempt to "recharacterize" its claim as one for indemnification does not survive scrutiny when the parties have stipulated contractually that any claims for money due under the Lease, other than Fixed Rent, Percentage Rent and payments under Section 34.23(b) (payments in lieu of admission fee) are "Additional Rent." In <u>Starns</u>, the plaintiff argued "that the inclusion of a demand for rent arrearages in a petition alleging breach of contract [did] not give the suit the character of an action to recover rent." <u>Starns v. Emmons</u>, 538 So.2d 275, 278 (La. 1989). Rather, the plaintiff maintained "that the applicable prescriptive periods depend[ed] on the nature of the action as a whole, arguing that because the entire action sound[ed] in contract, the ten year period of article 3499, not the three year prescription of article 3494, should apply." <u>Id.</u> The Louisiana Supreme Court rejected this rationale because it rendered Article 3494 useless, noting that "[a]ll of the actions covered by the provisions of that article essentially arise from contractual relationships." <u>Id.</u> The Louisiana Supreme Court went on to state that "Article 3494 does not present a choice between a contract remedy and some other remedy; it merely provides exceptions to the general rule stated in article 3499 that a personal action prescribes in ten years." <u>Id.</u>

Hollywood also relies on the general recognition by Louisiana courts that parties have the freedom to characterize the nature of an obligation in a contract and that once the parties have done so, they are compelled to live by that characterization. See <u>Eastover</u>

---

[6]Article 3499 states that "unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."

Property Owner's Association, Inc. v. Cochrane, 2002-1502 (La.App. 4 Cir. 5/21/03), 848 So.2d 710; Washington National Insurance Co. v. Arnaud, 96-134 (La.App. 3 Cir. 6/26/96), 676 So.2d 1130, 1131; Grabert v. Iberia Parish School Board, 93-2715 (La. 7/5/94), 638 So.2d 645, 647. Hollywood's citation of Eastover Property Owner's Association, Inc. is of particular relevance. In that case, a property owners' association brought an action against an individual property owner for nonpayment of association dues and assessments. Defendant property owner alleged that the claim was governed by the two-year prescriptive period set forth in Louisiana Civil Code Article 781, despite the fact that the act of building restrictions provided for a "personal action" against the individual property owner. Based on these facts, the appellate court found no error in the trial court's ruling that the act of restrictions, which clearly defined the nature of the assessments as being "personal," controlled and the association's action was subject to the ten-year prescriptive period applicable to personal actions, not the two-year limit of Article 781. See Eastover Property Owner's Association, Inc. , 848 So. 2d at 712-713.

Simply put, the Court finds that the characterization of the obligation of Hollywood to indemnify the City as provided in the Lease is the law between the parties. Under Article II of the Lease, any and all sums and payments to be paid by Hollywood under the Lease other than Fixed Rent or Percentage Rent are Additional Rent. Further, Section 6.01 broadly defines Additional Rent as "each and every item of expense of every kind and nature whatsoever related to or arising from the Premises or by reason of or in any manner connected with or arising from the development, leasing, operation, management, maintenance, repair, use or occupancy of the Premises or any portion of the Premises." The parties had the ability to "carve out" another exception in Article II for sums and

payments due under the indemnity provision and/or to limit the broad language of Section 6.01 to exclude indemnification, but the parties did not do so. Thus, the Court finds that regardless of whether the City's claim is based upon the indemnity language of Section 12.01, as asserted in its First Amended Complaint, or upon the provisions of Section 6.01, as set forth in its original Petition, the claim is one for Additional Rent. As argued by Hollywood, the City cannot ignore the characterization it already agreed to simply because it now leads to a disfavored consequence. The Court will now move onto its analysis of whether the City's claim for Additional Rent has prescribed.

### 3. Prescription.

As stated above, the bankruptcy court found that regardless of the City's classification, its claim was one for Additional Rent. Accordingly, the bankruptcy court applied Louisiana Civil Code Article 3494 to the instant case. Article 3494 provides that actions for arrearages of rent are subject to a liberative prescription of three years. The bankruptcy court examined the time line of events in this case, noting that "there was a communication in writing made by the City, . . . the letter of June 18," wherein the City made a demand for the payment of approximately $211,000. Record Document 3, Item 27 (Transcript) at 21. The bankruptcy court concluded that demand was made by virtue of the June 18, 2001 letter. See id. As for prescription, the bankruptcy court found that "the pleadings indicate that [June 18, 2001] would be the latest date that prescription commenced." Id., Item 27 at 21-22. Finally, the bankruptcy court reasoned that because prescription commenced as of June 18, 2001 and suit was not filed until July 2004, the City's claim for payment of Additional Rents had prescribed. See id., Item 27 (Transcript) at 22.

The City argues that this finding is flawed and, as was set forth more fully in section II(B)(2) of this Memorandum Ruling, the City maintains that because of the entirely distinct nature of a contractual guarantee of indemnification versus an obligation to pay rent, its claim against Hollywood, whether classified as indemnity or Additional Rent, is a contractual guarantee subject to the ten-year liberative prescriptive period applicable to personal actions under Louisiana Civil Code Article 3499. Hollywood again counters this argument by noting that even the City itself, in its original petition, alleged that its costs in repairing and replacing the damaged sewer main was an expense arising from the development of the Shoreside Complex and as such, constituted Additional Rent under the terms of the Lease. Hollywood also directs the Court to the Starns case, wherein the court noted that under Louisiana law, the character of an action disclosed in the pleadings determines the prescriptive period applicable to that action. See Starns, 538 So.2d at 277. Hollywood further points to Fifth Circuit case law standing for the principle that federal courts employ the same approach as Louisiana courts in determining the applicable prescriptive period. See Davis v. Parker, 58 F.3d 183, 190 (5th Cir. 1995), citing Starns, 538 So. 2d 277 (stating that "[w]e, of course, determine from the allegations in the complaint which prescriptive period is applicable.").

This Court has conducted its *de novo* review and finds that even the City's pleadings demonstrate that this is an action for recovery of Additional Rent under the terms of the Lease. Thus, Article 3494 is applicable and a three-year prescriptive period applies to the instant matter. Louisiana Civil Code Article 3495 provides that "prescription commences to run from the day payment is exigible." While the Court acknowledges that there may be differing views as to when the payment of Additional Rent became exigible, this Court

finds, like the bankruptcy court, that the Additional Rent the City contends is due became exigible on June 18, 2001, the date of the City's first demand letter seeking reimbursement of expenses. This finding is consistent with comment (b) to Article 3495, which states that "[o]n principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible." Based on this reasoning, any argument presented by the City that the Additional Rent was not due when it sent the June 18, 2001 demand letter is not plausible.[7] As of June 18, 2001, the City clearly had a cause of action and could have filed its lawsuit. Because the City waited until July 28, 2004 to file its lawsuit, the City's claim has prescribed. Accordingly, this Court affirms the bankruptcy court's ruling that the City's claim for payment of Additional Rents had prescribed.

## III.   CONCLUSION.

Based on the foregoing, the Court finds no genuine issues of material fact and that Hollywood is entitled to summary judgment. Accordingly, this Court hereby affirms the judgment of the bankruptcy court, entered on August 29, 2005, granting a Motion for Summary Judgment filed by Hollywood; dismissing, with prejudice, the claims of the City; and dismissing as moot a Motion for Summary Judgment filed by the City.

---

[7]During the August 15, 2005 oral argument before the bankruptcy court, the City argued that since its June 18, 2001 demand letter did not comply with the notice provisions of the Lease, the bankruptcy court should not use that date to determine when prescription commenced. See Record Document 3, Item 27 (Transcript) at 11-14. Instead, the City argued that prescription commenced no earlier than May 12, 2003, when the City, through counsel, sent a "Notice" in conformity with Article XXXVI of the Lease to demand reimbursement of approximately $211,000.00. See id. However, this "notice" issue was not presented to this Court by the City as a basis for appeal and, thus, it is not necessary for the Court to address this issue.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 11th day of September, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE